OPINION
Plaintiff-appellant, Reiter Dairy, Inc., is a dairy and fruit juice manufacturer and supplier. Defendant-appellee, the Ohio Department of Health ("ODH") is an agency of the state of Ohio which, through its Bureau of Nutrition Services, administers a federal nutrition assistance program known as Women, Infants Children's Home Delivery Services Program ("WIC Program"). Defendant-appellee, the Ohio Department of Administrative Services ("ODAS"), is also an agency of the state of Ohio, and, along with the Office of State Purchasing, was responsible for receiving bids and awarding contracts for the WIC Program. The contracts provided that private vendors delivered milk, juice and other grocery products directly to the homes of eligible participants. Reiter was a home-delivery vendor under contract with the state for the WIC Program through 1997, and had been a vendor for approximately twenty years.
ODH contracted with Reiter to be a WIC Program vendor in twenty-four counties in Ohio for the period of October 1, 1995 through September 30, 1997. In early 1997, ODH determined that the home delivery program was not efficient in certain Ohio counties and determined that six, and eventually seven, counties would be converted to a retail system, where the participants would be given vouchers to use to purchase the products at grocery stores and the home-delivery system would be phased-out and discontinued in those counties.
On March 5, 1997, WIC Program administrators, Larry Prohs and Kyle Dupler, met with Robert Livingston, the executive vice-president of Reiter. Prohs and Dupler explained to Livingston the reasons that the state determined that conversion to a retail system was necessary and asked for Livingston's agreement to phase-out the seven counties before Reiter's contract expired on September 30, 1997. Prohs and Dupler testified that Livingston agreed to the early conversion but, if he had not agreed, they would have waited until the 1995 contract ended. Reiter alleges that it incurred $857,880.04 in damages due to the early conversion, including lost profits and ramp-down costs.
Reiter also seeks damages arising from the disqualification of its bid for the 1997-2000 contract. ODAS solicited competitive sealed bids for a contract to provide home delivery of the WIC Program for the period October 1, 1997 through September 30, 2000, separating the bids by twenty-five county areas throughout Ohio. Reiter submitted bids for all twenty-five counties. The bid specifications contained an approved name-brand list upon which "Reiter" was listed as an approved brand of orange juice. However, Reiter listed "Jubilee" brand orange juice on the bid. On June 20, 1997, ODAS opened the bids. Reiter's bid was deemed non-responsive and the contract for all but eleven counties was awarded to other bidders. ODAS received no qualified bids for the remaining eleven counties, so those counties were converted to the retail system. On July 28, 1997, ODAS notified Reiter of the reasons that its bid was deemed non-responsive, as follows:
 The CSB [Competitive Sealed Bid] contained an approved brand list for orange juice; the orange juice offered is not on the approved brand list.
 The CSB [Competitive Sealed Bid] specified orange juice with a six (6) oz. serving containing at least one hundred percent (100%) of the United States Recommended Daily Allowance (USRDA) for Vitamin C for adults and children four (4) years or older; the product offered is labeled to indicate that an eight (8) oz. serving contains eighty percent (80%) of the USRDA for Vitamin C. [Stipulated Exh., Plaintiff's Exh. 13.]
Reiter claims that Jubilee and Reiter brands are identical products with different labels. Reiter also claims that the Jubilee product actually contained one hundred percent of the USRDA of Vitamin C, but the label indicated a conservative estimate to account for the potential decrease of Vitamin C content over time. The label was changed to reflect the one hundred percent USRDA requirement for Vitamin C, but the label change occurred after the bid opening and disqualification of Reiter's bid. Reiter seeks damages of $5,766,418.53, which represents lost profits over the life of the 1997 contract.
Finally, Reiter seeks damages for infant formula which was delivered in September 1997 to WIC Program participants for which the state refused to pay. Reiter claims that it was to deliver infant formula according to the normal procedure of delivering a full month supply at one time. The state contends that Reiter was told to prorate the formula because Reiter's contract was to end on September 30, 1997, and the participants were not to receive food for future weeks because another vendor would begin delivery on October 1, 1997. Reiter sought $526,078.49 for payment for formula delivered and the state paid $302,719.86. Reiter seeks payment of the denied $223,358.63 as damages.
On August 18, 1997, Reiter filed a complaint in the Franklin County Court of Common Pleas seeking injunctive and declaratory relief. The trial court denied the requested injunctive relief, finding that Reiter had failed to demonstrate that ODAS had abused its discretion in requiring bidders to bid on products included in the list of approved products which was part of the invitation to bid, and finding that Reiter's bid was non-responsive. The trial court also found that Reiter had failed to establish that it would suffer irreparable injury because it had an adequate remedy at law. Reiter appealed to this court. This court found that the contract had already been awarded or counties converted to the retail system and, thus, found Reiter's contention that ODAS abused its discretion in rejecting its bid as non-responsive to be moot. Reiter also sought a judgment from this court essentially holding that the trial court's decision would not bar a later action in the Ohio Court of Claims for damages on the basis of res judicata, but this court found that the issue of the potential effect of the trial court's judgment upon a possible action in the Ohio Court of Claims was not an issue properly before this court. See Reiter Dairy, Inc. v. Ohio Dept. of Adm. Serv. (1998), Franklin App. No. 97APE10-1314.
Reiter then filed this action in the Ohio Court of Claims seeking damages for breach of contract, failure to pay for certain goods which had been delivered and for abusing its discretion in rejecting Reiter's bid. After a bench trial, the court found that Reiter failed to prove any of its claims by a preponderance of the evidence. Reiter filed a notice of appeal and raises the following assignments of error:
 First Assignment of Error: The trial court erred as a matter of law by finding that Reiter Dairy's contract with the State was rescinded in the absence of consideration and mutuality, and given Reiter's duty to mitigate.
 Second Assignment of Error: The trial court erred as a matter of law by finding that Reiter Dairy should not be reimbursed for actual infant formula delivered as directed by the contract.
 Third Assignment of Error: The trial court erred as a matter of law by finding that Reiter Dairy is collaterally estopped from challenging the State's improper disqualification of Reiter Dairy from the renewal contract.
By the first assignment of error, Reiter contends that the trial court erred as a matter of law by finding Reiter's contract with the state was rescinded. The trial court found that Livingston agreed to the proposed early phase-out and conversion and, therefore, Reiter waived any objection. Thus, the trial court found that the parties rescinded the contract and Reiter did not prove that the state had breached the contract.
The general rule is that one party to a contract cannot rescind or cancel the contract without the consent or agreement of the other unless the other party is in default. William M. Thornton Builders, Inc. v. Del Matto (1981), Franklin App. No. 80AP-733. A contract may be terminated by the mutual consent and consideration of the parties at any time. Thurston Hays v. Ludwig (1856), 6 Ohio St. 1. "When the verbal agreement of parties amounts to a waiver or discharge of mutual stipulations in a written contract, either in whole, or in part, the discharge of each by the other, from the obligations of the contract, may furnish a sufficient consideration." Thurston Hays, at 5. Whether the parties agreed to change or abandon the contract is a question of fact for the trier of fact to determine. Mooney v. Green (1982), 4 Ohio App.3d 175,178.
In this case, WIC Program administrators, Prohs and Dupler both testified that they met with Livingston, the executive vice-president of Reiter, and, after they explained the reasons that the state determined that conversion to a retail system was necessary, Livingston agreed to phase-out the seven counties before Reiter's contract expired on September 30, 1997. Prohs and Dupler testified that Livingston agreed to the early conversion but, if he had not agreed, they would have waited until the 1995 contract ended. Livingston wrote a letter to Prohs after the meeting and stated, as follows:
 I am writing in response to your letter, of March 7, 1997, regarding the early phase in of counties you selected to convert from home delivery to retail. Naturally I am disappointed that these counties will be moved from home delivery system to the retail system of W.I.C. As discussed at our meeting, since you have made that decision we will do our best to help the conversion to go as smoothly as possible. By starting the conversion prior to the end of the current contract, it will cost Reiter Dairy the revenue and profits that would normally be expected. However, I am ready to accept this to help the transition flow in the least disruptive manner for both the participants and the Health Department in each of the counties chosen to convert. * * * [Emphasis added. Plaintiff's Exh. 5, March 11, 1997.]
While arguably the letter might be subject to more than one interpretation, the trial court found that Livingston's own words demonstrated that he waived any objection to the early conversion. The weight to be given and the credibility of the witnesses are issues for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230. Reiter stopped delivery and the state stopped making payments in the seven counties and, therefore, provided sufficient consideration for the rescission. Although Reiter argued that it continued to make deliveries, Livingston testified that seven counties were terminated by the state and Reiter discontinued servicing those counties generally mid-May through June 1997, with service to some of those counties continuing until July through September 1997. Dupler testified that six of the counties completed conversion by mid-August and Franklin County completed conversion by mid-to-late September 1997. Thus, both parties ceased performance of that part of the contract and Livingston's language in his letter indicates agreement. Even though Reiter made deliveries during the phase-out, but not a full delivery route, Reiter was paid for those deliveries. We find that the trial court did not err in finding that Livingston agreed to the early conversion and waived any objection to such, and that the contract was rescinded in part. That conclusion was supported by competent, credible evidence and we will not disturb it. C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279. Reiter's first assignment of error is not well-taken.
By the second assignment of error, Reiter contends that the trial court erred as a matter of law by finding that it should not be reimbursed for actual infant formula delivered. Reiter seeks damages for infant formula which was delivered in September 1997 to participants but the state refused to pay for the delivery. Reiter claims that it was to deliver infant formula according to normal procedure of delivering a full month supply (thirty-one cans) at one time and the state contends that Reiter was told to prorate the formula because Reiter's contract was to end on September 30, 1997. The trial court found that the greater weight of the evidence persuaded the court that Reiter was given specific instructions as to how to prorate the food deliveries for the month of September and it did not have the authorization to deliver full packages of infant formula. The trial court found that Reiter did not properly prorate the food and, therefore, delivered food outside of the contract period and failed to prove that the state breached its contract by refusing to pay for the infant formula.
The 1995 contract provided, at 9, that: "The State WIC Program may deny payment to the Contractor for improperly redeemed DVRs [delivery verifications receipts]." Prohs sent a letter to Reiter, dated August 29, 1997, which advised Reiter to prorate DVRs that would continue into October. The letter provided:
 * * * [T]he participant is only entitled to the foods covering the delivery weeks in September. * * *
* * *
 Any DVR with a full food package assigned to it, with a first day of use on or after September 8 through September 28, will require the vendor to modify the DVR. * * *
* * *
 State WIC will review DVRs submitted for payment during the period in question. State WIC will only pay for the weeks of food that should have been delivered based on the food spread and delivery week schedules developed and used during the term of the contract. DVRs not properly modified will be rejected and payment denied.
While the letter made no specific reference to infant formula, it also made no exceptions for infant formula to the requirement that deliveries be prorated for formula.
Reiter contends that a state WIC employee, Paul Maragos, advised it to deliver full infant formula packages; however, Maragos was the supervisor of the vendor contracting section on the retail side and he had "very limited" responsibilities regarding home delivery and was not involved in giving advice to vendors regarding proration. There is no evidence Maragos had the authority to authorize delivery of formula to be used beyond September 30, 1997. Even if Maragos had told Reiter not to prorate the infant formula, the doctrine of estoppel does not apply against a state or its agencies in the exercise of a governmental function. State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections (1997), 80 Ohio St.3d 302, 307. The state paid Reiter for foods Reiter was authorized to deliver. Dupler testified that Reiter understood how to prorate because Reiter did modify some of the DVRs it submitted by prorating and those DVRs were paid. Based upon this evidence, Reiter delivered food in September to be used in October even though it was not authorized to do so. Reiter should have prorated the packages of infant formula and delivered only the specified weeks' supply rather than the entire package. Thus, the state did not breach the contract and Reiter's second assignment of error is not well-taken.
By the third assignment of error, Reiter contends that the trial court erred as a matter of law by finding that Reiter is collaterally estopped from challenging the state's improper disqualification of Reiter from the 1997-2000 contract. The state maintains that the issue is barred by the doctrine of res judicata because this issue has already been litigated by the common pleas court. The doctrine of res judicata provides that "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379, syllabus. In Grava, the court stated that the doctrine of res judicata bars not only subsequent actions involving the same legal theory of recovery as the previous action, but also claims which could have been litigated in the previous action:
 * * * "It has long been the law of Ohio that `an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were or might have been litigated in a first lawsuit'" (emphasis sic) (quoting Rogers v. Whitehall [1986], 25 Ohio St.3d 67, 69, 25 OBR 89, 90, 494 N.E.2d 1387, 1388). We also declared that "[t]he doctrine of res judicata requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it." Id. [Grava, at 382, quoting Natl. Amusements, Inc. v. Springdale (1990), 53 Ohio St.3d 60, 62.]
Reiter contends that the case is not barred by res judicata because the action in the common pleas court was for injunctive relief, not money damages. The trial court found that, while an action for money damages from the state may only be litigated in the Court of Claims, the issue of whether the state abused its discretion in rejecting Reiter's bid had already been decided by the common pleas court and, thus, the action was barred by res judicata. The trial court also determined that, even if Reiter's action was not barred by res judicata, the state did not abuse its discretion in rejecting Reiter's bid.
We need not determine whether this claim is barred by res judicata or collateral estoppel, because we find that the state did not abuse its discretion in rejecting Reiter's bid. R.C. 125.11 provides:
 (A) * * * [C]ontracts required to be awarded pursuant to competitive sealed bidding, including such contracts awarded under section 125.081 of the Revised Code, shall be awarded to the lowest responsive and responsible bidder on each item in accordance with Section 9.312 of the Revised Code. * * *
R.C. 9.312 provides, in relevant part:
 (A) If a state agency * * * is required by law * * * to award a contract to the lowest responsive and responsible bidder, a bidder on the contract shall be considered responsive if his proposal responds to bid specifications in all material respects and contains no irregularities or deviations from the specifications which would affect the amount of the bid or otherwise give him a competitive advantage. * * *
The award of a contract is a matter within the discretion of the public authority. Smith Johnson Constr. Co. v. Ohio Dept. of Transp. (1998),134 Ohio App.3d 521, 526.
In this case, the 1997 bid specifications required that bidders bid products from an approved name-brand list and stated that, if a bidder did not do so, the bid would be rendered non-responsive and further consideration denied. Even though Reiter was the lowest bidder in seventeen or eighteen counties, Reiter's bid was deemed non-responsive for two reasons. First, "Jubilee," the brand bid by Reiter, was not on the approved list of name-brands of orange juice. A procedure to add brands to the approved list before the bid deadline passed was available to Reiter to request the addition of Jubilee as an approved brand, but Reiter did not utilize the procedure even though it had done so to add Jubilee to the approved brands of apple juice. Second, the label on the Jubilee orange juice stated that it contained only eighty percent of the USRDA of Vitamin C and the bid specification required the juice to contain one hundred percent of the USRDA of Vitamin C.
Reiter claims that Jubilee and Reiter brands are identical products with different labels. Reiter also claims that the Jubilee product actually contained one hundred percent of the USRDA of Vitamin C but the label indicated a conservative estimate to account for the potential decrease of Vitamin C content over time. Reiter claims that the state should have actually tested the Jubilee juice to determine whether it contained one hundred percent of the USRDA of Vitamin C rather than relying upon the label to determine the Vitamin C content; however, we find that the state did not abuse its discretion in disqualifying Reiter's bid because Reiter failed to submit a bid with an approved name-brand of orange juice and it had no obligation to test the juice. Reiter's third assignment of error is not well-taken.
For the foregoing reasons, Reiter's three assignments of error are overruled, and the judgment of the Ohio Court of Claims is affirmed.
Judgment affirmed.
DESHLER and BROWN, JJ., concur.